CLARENCE M. GAY, Clerk Circuit Court, Orange County, *et al.,* v. STATE, *ex rel.* CLYDE M. McKENNEY, Tax Collector, Orange County.

Two Cases.
155 So. 845.
Division B.
Opinion Filed June 23, 1934.

*Tilden & Hays* and *W. ·H. Poe,* for Plaintiff in Error;

*C. O. Andrews,* for Defendant in Error.

Buford, J.—Clyde M. McKenney became Tax Collector of Orange County for the four-year term beginning January, 1933. On December 5, 1933, he filed petition in mandamus to coerce the Clerk of the Circuit Court of Orange County to pay over to him as Tax Collector of Orange County all of the commissions which had been paid in to respondent as Clerk of the Circuit Court of Orange County for the month of July, 1933, and each month since that time which represented the commissions on tax sales in instances where the lands had been at the tax sale knocked off to, and the tax sale certificates issued to, the· State of Florida and which certificates had been redeemed and the face thereof, including the Tax Collector's commissions, had been paid and where such commissions had not theretofore been paid to the Tax Collector. All of which tax sale certificates had been issued by a Tax Collector preceding McKenney in office.

The purpose of this suit was to reach those commissions

which had come into the hands of the Clerk under the provisions of Chapter 15918, Acts of 1933.

On the 21st day of December, 1933, McKenney filed petition in mandamus against the Clerk of the Circuit Court and the Board of County Commissioners to coerce the payment over to him of like commissions which had been paid over to the Board of County Commissioners by the Comptroller under the provisions of Section 780 R. G. S., 1004 C. G. L., after January 1st, 1933, and prior to July 1st, 1933.

The two cases were later consolidated. Peremptory writ of mandamus issued in each case pursuant to the prayer.

The commissions involved are those paid on redemption of tax certificates issued during the years 1929, 1930, 1931 and 1932. The question to be determined is whether or not commissions paid in the redemption of tax sale certificates become a part of the fund from which the Tax Collector derives his compensation at and when the commissions are paid as a part of the redemption of the tax certificate, or become a part of the fund from which the compensation of the Tax Collector is to be paid as of the time when the certificates were issued. Stated in another way, the question is, When a tax sale certificate is issued by a Tax Collector to the State of Florida at a tax sale for non-payment of taxes in a certain year, does the commission on that tax sale certificate become a part of the fund from which the Tax Collector may receive compensation for that year, or does it become a part of the fund from which the Tax collector receives his compensation for the year in which the tax certificate is redeemed and the commission is paid as a part of such redemption?

In this case the record shows that the former Tax Collector had received the entire compensation to which he was entitled each year for the performance of the duties de-

volved upon him and that these commissions had come into the hands of the Clerk of the Circuit Court and the Board of County Commissioners after his term of office had expired. The respondents contend that under this condition these commissions constitute a part of the fund established by Section 4 of Chapter 11954, Acts of 1927. The relator contends that inasmuch as the Tax Collector who made the sales has received his full compensation as fixed by Chapter 11954, *supra,* these commissions should be paid over to him as the then Tax Collector to be applied as part of the income of the Tax Collector's office for the year 1933. In arriving at the correct solution of this problem we must consider not only the statute limiting the compensation of county officers, but also the several statutes which have fixed the fees of Tax Collectors for making tax sales. We will first consider the statutes fixing the compensation of Tax Collectors for making such sales. Section 757 R. G. S., 970, C. G. L., provided:

"A copy of the newspaper containing the advertisement shall be filed in the office of the clerk of the circuit court within ten days after said sales. When lands are advertised for taxes under the provisions of this law, the tax collector shall be entitled to fifteen cents for certificate of sale, and shall be entitled to five per cent. commission on the amount of each delinquent tax when actual sale is made."

Under this provision, the commissions due Tax Collectors were paid immediately after the sale by the State on all those certificates issued to the State. This became a great burden and, therefore, the law was changed. Chapter 15789, Acts of 1931, amending Section 970, *supra,* provided:

"When lands are advertised for taxes under the provisions of this law the tax collector shall be entitled to fifteen (15c)

cents for certification of sale and shall be entitled to five per cent. (5%) commission on the amount of *each delinquent* tax when actual sale is made, but *said tax collector* shall not be entitled to any commission for the sale of such property made to the State of Florida until said commission is paid upon the redemption or sale of the tax certificate or certificates issued thereon to the State." (Italics ours.)

The effect of this amendment, it is clear, was not to ultimately deprive the Tax Collector who made the sale of his right to compensation for that service, but it merely deferred the obligation of the State to pay him for that service until the time when the State should receive the amount required to pay the same through the redemption of the tax certificate.

It appears to us that the status of the fund became fixed upon the sale being made and whether or not upon its final collection it would be paid over to the Tax Collector who made the sale or would be paid into the "excess fee" fund set up under the provisions of Chapter 11954, Acts of 1927, would depend upon what compensation the Tax Collector had already received from the county.

Section 1 of Chapter 11954, Acts of 1927, provides:

"That each county official whose compensation for his official duties is paid wholly or partly by fees or commissions, or for his official services from the whole or a part of the fees, or commissions so collected, the following sum only: All the net income from such office not to exceed Five Thousand ($5,000.00) Dollars; Sixty (60%) per cent. of the next Three Thousand ($3,000.00) Dollars, or any fraction thereof; Forty (40%) per cent. of the next Two Thousand ($2,000.00) Dollars or any fraction thereof; and Twenty-five (25%) per cent. of the rest and residue thereof; Provided, that no such official shall under the fore-

going computation of remuneration receive from the income so collected by him more than Seven Thousand Five Hundred ($7,500.00) Dollars per year."

Now this section fixes the maximum yearly compensation for the county officers, one of whom is the Tax Collector. This officer is allowed all the net income from the office up to $5,000.00. Then he is allowed 60% of the next $3,000.00, or any fraction thereof, and 40% of the next $2,000.00, or any fraction thereof, and 25% of the rest and residue. Now if the net income is sufficient to be $5,000.00, $3,000.00 and $2,000.00, there is a net income of $10,000.00 of which the officer may hold only $7,500.00. The statute defines the words "net income" as follows:

"That the term 'net income' as provided by this Act shall mean the residue of the income from such office after deducting all reasonable expenditures for the salaries of clerks and assistants and the necessary expenditures for the proper operation of said office."

So it is, that when the net income of the office exceeds $7,500.00 for any one year the residue of the net income from the office goes into and becomes a part of the excess fee fund set up by Chapter 11954, *supra,* and it is immaterial, as we see it, whether that residue is converted into cash before or after the expiration of the term of office of the incumbent who performs the service for which the fees are charged and collected.

By Section 4, Chapter 11954, *supra,* it is made the duty of each and every officer to pay annually into a special fund all money in excess of the sum to which they are, under the provisions of the Act, entitled as annual compensation therein allowed. The Act provides the manner in which this fund shall be expended by the Board of County Commissioners.

In this case, as heretofore stated, there is no question concerning the right of the former Tax Collector to any part of this fund. He has been paid in full, but this fund was a part of the earnings of the office of the Tax Collector for the years 1929 to 1932, inclusive, and being compensation of the office earned in those years, it is, when collected, a trust fund in the hands of whomever may collect it which must be paid into the excess fee fund set up in Chapter 11954, *supra,* and we can see no reason to hold that it is any part of the earnings of the office of the Tax Collector for the term beginning January, 1933, and, therefore, if these funds now in the hands of the Clerk of the Circuit Court and the Board of County Commissioners were delivered over to the Tax Collector it would become his duty to pass them back to the County Commissioners as a part of the excess fee accruing to the office of the Tax Collector prior to the year 1933. The office of Tax Collector, and not the Tax Collector, was entitled to receive this fund as compensation for the service performed in and by the office of Tax Collector for the years prior to 1933 and the office would receive it in trust either for the Tax Collector who had not been paid his full compensation, or in trust for the County of Orange to be passed to the excess fee fund, if the Tax Collector had already received (which is true in this case) all compensation to which he was entitled under the statutes herein referred to.

Inasmuch as McKenney, the Tax Collector of Orange County, is not shown to have any interest in this fund except as that of a conduit through which it might pass back to where it already is and the other part might pass from the Clerk of the Circuit Court to himself as Clerk of the Board of County Commissioners, the writ of mandamus could serve no useful purpose, nor accomplish anything of

value. The Tax Collector is not responsible for the fund unless it comes into his hands. The answer of the Clerk of the Circuit Court shows that he holds the fund ready, willing and able to deliver it to the Board of County Commissioners to go into the excess fee fund. The answer of the Board of County Commissioners shows that they have already received a part of the fund and are now ready to deposit it in the excess fee fund, and, as it is a trust fund which must go into the excess fee fund, there is no reason why it should not go to that place by the most direct route. If it is required to go through the hands of the Tax Collector then it might, under the statute, remain in his hands until he makes his report at the end of the year, because, under the statute, he is not required to pay over excess fees coming into his hands until the end of the year and if that should happen the county will be out of the use of the money for some nine months, although it is now ready to be delivered into a fund where it must be assumed it will be used for proper and needful purposes.

For the reasons stated, the judgment in each case should be reversed with directions that the writ in each case be quashed.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.